## HEIM v. TORRINGTON CO.
### No. 520.

District Court, D. Connecticut.

Aug. 14, 1942.

Robert S. Blair, John C. Blair, and James L. Black, Jr., all of New York City, and Horace L. Rockwell, of Hartford, Conn., for plaintiff.

Herbert H. Porter and Eugene G. Mason, both of Washington, D. C., and T. Clay Lindsey, of Hartford, Conn., for defendant.

HINCKS, District Judge.

### Findings of Fact

1. The patents in suit are three in number,—No. 1,943,864 issued January 16, 1934, on an application filed October 11, 1928; No. 2,080,609 issued May 18, 1937, upon an application filed January 2, 1931; No. 2,102,460 issued December 14, 1937, upon an application filed July 18, 1934. Of these, the first two mentioned are article patents and the third is a process patent. All were issued directly to the patentee who is the plaintiff herein. Although numerous defenses appear of record the only defenses pressed on submission are those of noninfringement and invalidity.

2. Patent No. 2,080,609 discloses an invention for a roller bearing structure comprising "a complete unit which may be shipped as such from the manufacturer and eliminates the necessity of assembly by the user", which in the form received by the user may be readily inserted and applied in any machine adapted to receive it. It comprises a cylindrical shell the inside surface of which serves as a raceway for parallel rollers which are locked into their position in the raceway by flanges integral with the shell which are bent inwardly over the tapered ends of the rollers, forming as it were end walls for the raceway. The exterior surface of the cylindrical shell is unbroken so that the device is well adapted to fit into any round aperture of a machine or bushing adapted to receive it. And since the flanges at both ends of the device when as-

sembled extend inwardly far enough to hold the rollers (by their tapered ends) in place but not so close to the central axis of the device as the nearest surfaces of the rollers, a shaft may be inserted which bears upon the rollers without touching the flanges which confine them. Variant forms of the structure are disclosed which are not material to any issue submitted to the court. Of this patent, claims 10, 12, 13 and 14 are in issue. Of these, claim 12 is typical. It is as follows: "In bearing construction, in combination, a race of sheet metal having an inner tracking surface continuous axially and circumferentially, the outer periphery of said race also being continuous axially and circumferentially, said race including a stamped sheet metal cylindrical member forming said tracking surface, a series of rolls disposed about the inner bearing surface of said cylindrical member and adapted to track thereon, said rolls having their axes parallel to one another and to the axis of said race, said rolls being unseparated and immediately adjacent one another and having their ends reduced, and a pair of flanges integrally formed with said race and bent inwardly therefrom over the opposite ends of said rolls to prevent axial displacement thereof, said flanges having their ends bent inwardly toward each other to engage under and contact portions of the reduced ends of the rolls to retain the rolls against radial displacement."

3. The specifications of No. 2,080,609 disclose not only the article described in paragraph 2 above, but also describe it by outlining a method by which the article may be made. The method thus disclosed contemplates the use of two cylindrical shells which in the process of manufacture are telescoped together under substantial pressure in a forced fit. That high pressure is required is indicated by the specification that the outside diameter of the inner shell is somewhat greater than the inside diameter of the outer shell. Under this method, the flange which serves as one end-wall for the race originally is integral only with the inner shell while that serving as the other end-wall originally is integral only with the outer shell. However, the composite shell with the two flanges of the completed device, due to the pressure required for their forced fit, is essentially an integral piece of metal from every practical and functional aspect. The plaintiff's commercial structure is made under this method, the two shells being assembled under a pressure of between 1,500 and 2,000 pounds.

4. Patent No. 2,102,460 is a method patent disclosing a process for making a self-contained roller-bearing structure such as was disclosed in Patent No. 2,080,609. The method disclosed is described in par. 3 above. Claims 9, 15 and 16 are in suit. Of these claims 15 and 16 are for all present purposes identical. Claim 15 is as follows: "The method of making a roller bearing which consists in forming from sheet metal a cylindrical sleeve having at one end thereof an inwardly directed retaining flange with the free edge thereof bent axially of said sleeve and having at the other end thereof a substantially similar flange, placing in contact with a part of said sleeve a plurality of small diameter cylindrical rollers having reduced ends, with one reduced end of each roller disposed within said first-mentioned flange, and subjecting the second-mentioned flange to substantial axial pressure to force said flange into a relative position wherein its free edge overlies the adjacent reduced end of each of said rollers and contacts with said reduced ends, whereby to hold said rollers and sleeve as a unit."

5. Claim 9 of Patent No. 2,102,460 differs from claims 15 and 16 in that it expressly includes as a step "assembling a flanged portion on the other end of said race by exerting substantial pressure on said race in an axial direction to deform the metal which forms the race."

6. Patent No. 1,943,864 discloses a roller bearing in which the raceway is in two parts, each of which comprises a cylindrical shell or cup flanged at its outer end (bottom of the cup) to receive the tapered ends of the roller bearings. In a preferred form, the length of the cylindrical portion of each cup is less than half the length of the axis of the rollers so that when assembled and positioned in the bore of a bushing, an empty space will intervene between the two cups. For the breadth of this space the rollers will have no bearing on the raceway: only the ends of the rollers will have a bearing on the raceway. This empty space, marked as 18 on the drawings, the patentee utilizes as a reservoir for lubrication. However, the specification suggests that the disclosure may also include a form in which the cylindrical portions of the two shells when positioned end to end shall equal the length of the rollers. In such a form, of course,

the empty space between the two shells will be absent, and the raceway will furnish a continuous tracking surface for the entire length of the rollers.

Neither form of the disclosure, however, constitutes a unitary device, mechanically self-contained. The rollers at each end are loosely positioned in a flanged shell, and until the device is seated in the bore of a bushing it is wholly lacking in any mechanical means to hold the parts together. To hold the parts together in operating relationship to each other the patentee relied on other elements no part of the claimed invention. First, he contemplated that the friction between the cylindrical shells with the bore of any bushing into which his bearing might be inserted would tend to keep the shells from axial displacement. And also, to insure this result, he provided for shoulders bearing against the end-flanges. These shoulders are locked against axial displacement by a nut, and hence hold the flanges of the bearing from axial displacement.

7. Only claim 1 of Patent No. 1,943,864 is in suit. It is as follows: "In construction for anti-friction bearings, in combination, a device of sheet metal of general cylindrical form having inwardly directed stiffening flanges at each end which are bent toward each other, and a set of rolls having reduced ends inserted between said flanges and overlapped and held in position thereby at their ends."

8. Within six years prior to the bringing of the complaint the defendant has made a device which is charged to infringe all specified claims of the two article patents in suit. This device is a self-contained roller-bearing structure which includes a one-piece raceway made from a single sheet of metal which on both ends is bent inwardly to form the flanges which serve as the side walls of the race. Both the interior tracking surface of the race and its external periphery are continuous axially and circumferentially. It contains rollers with tapered ends.

All the elements of the defendant's device are essentially the same as those of the device disclosed in Patent No. 2,080,-609 and the similarity extends to the relationship of the parts to each other in combination.

9. Within six years prior to the bringing of the complaint, for the manufacture of the devices described in par. 8 above, the defendant has used a method which is charged to infringe the method of specified claims of Patent No. 2,102,460. The defendant's method consists in forming a cylindrical cup-shaped element from a blank, stamped from a metal strip. The central portion of the bottom of the cup is then punched out leaving the remainder of the bottom to form a curved flange, the extreme end of which is then forced inwardly to form a trough adapted to receive one end of the tapered rollers of the bearing when assembled. The other end of the cylindrical shell is then thinned by a drawing operation, and a portion thereof is bent inwardly to form the second flange, leaving room, however, for the insertion of the rollers which is accomplished manually at this stage. The assembly is then completed by the application of pressure in an axial direction which curls the thinned end of the flange inwardly, thus locking the rollers in operating position.

10. The plaintiff has made commerical use of the disclosures of the three patents in suit but offered no evidence to prove the extent of such use.

11. The use of parallel, cylindrical rollers interposed between a shaft or axle and its bushing or hub to reduce the friction resulting from the relative movements of such parts, has of course long been well known. Cf. Seyl, No. 117,211 (1871). And generally such rollers have had a treadway against the interior of a cylindrical surface as in Seyl. To provide the raceways in which the rollers travel with end-flanges or sidewalls which will insure against the axial displacement of the rollers is also old in the art. Seyl; Mendenhall No. 314,967 (1885). Likewise, the use of rollers having tapered or reduced ends designed to fit into a trough or recess in the end-flange, and end-flanges so designed that they will hold the rollers in their traveling position without coming into contact with the shaft which bears on the rollers. Seyl; King, No. 786,036 (1905); George, No. 1,091,830 (1914); Vogel, No. 1,207,449 (1916); Folk, No. 1,230,145 (1917). Sometimes in the early art the flange was integral with the raceway. Cf. Mendenhall, King and George. Sometimes the flange constituted a separate part. Cf. Seyl, Vogel and Higginson, No. 426,535 (1890). Some of the earlier raceways were apparently made of castings. Cf. Seyl. But in George, No. 1,173,793 (1916), and George, No. 1,091,830 (1914), the use of sheet metal for a raceway was

expressly specified, and in Mendenhall and Vogel it is reasonable to infer from the disclosure that the use of sheet metal was contemplated. To form a strip of sheet metal into a piece suitable for a raceway by the use of stamps, dies and punches, involved no problem not known to the prior art. Cf. Anderson, No. 671,427 (1901).

12. King is a reference particularly pertinent to Patent No. 1,943,864. It disclosed a two-piece raceway, each piece comprising a cylindrical portion with an integral flange recessed to receive the reduced end of the rollers. The raceway pieces and rollers did not constitute a unitary structure. Rather, to insure against the axial displacement the flanged raceway was driven into a seat in the wheel and then locked in place by a screw through the two faces of the wheel. The raceway was made of metal. Sheet metal was not specified. Probably it was machined from a casting.

13. Mendenhall disclosed a roller bearing for a furniture caster or roller skates. Its raceway comprised two metal cups telescoped together to form what was called an "anti-friction box". The interior of side wall of the inner cup constituted the bearing surface of the rollers: the bottom of each cup constituted a flat flange. The rollers had plane ends,—neither tapered or reduced. Apertures made in the centre of the bottom of each cup permitted the entrance of the caster-shaft and its bearing on the rollers. The disclosure recognized that by telescoping the cups together, apparently by hand, enough friction would result to hold the cups together with the rollers in position, as a unitary structure for purposes of handling prior to assembly. But there was no indication of a forced fit between the boxes: in operation, to prevent the axial displacement inwardly of the inner box, the body of the caster or a shoulder therein was utilized and the axial displacement outwardly of the outer box was accomplished principally by friction between the box and the bore of the retaining caster in which the box was seated. Only incidentally did Mendenhall rely upon the friction between the two cups of the box to prevent axial displacement in operation.

14. Vogel, No. 1,207,449 (1916), showed a roller bearing in a hub construction for a toy wheel of such design that the inference is required that the use of sheet metal for the raceway, although not expressly specified, was definitely contemplated. His raceway was a cylindrical shell, its outer surface continuous axially and circumferentially, except that at each end, at least in a preferred form, it was bent outwardly to abut on the end of the surrounding shell of the sleeve in which it was seated. At each end of the raceway a flange made from a separate piece of similar material also in the form of a cylindrical shell is shown as fitted into the interior of the raceway-shell, the inner end of the flange being bent inwardly (parallel with the axis of the raceway) to hold the rollers with their tapered ends in place. But Vogel showed the outer end of the flange-shell as turned outwardly so that when assembled it abuts upon the end of the raceway-shell and its containing sleeve, thus limiting the extent to which the flange-shell may be pressed into its containing raceway-shell. Vogel shows his bearing as seated in a sleeve shaped to receive it, the ends of the sleeve being bent outwardly to form brackets for the spokes of the wheel. There is no indication that Vogel relied upon a forced fit of his flange-shell into the raceway-shell to prevent axial displacement in operation: although the point was disputed at trial, I find that for this he relied principally upon the conventional shoulder on the axle (not expressly disclosed) and upon a pin through the axle. However, Vogel clearly disclosed the use of sufficient friction between the two shells of raceway and flange to make a hub, with its included roller bearing, which is "self-contained and can be easily mounted upon the axle."

## Opinion

### No. 1,943,864

The only disclosure of this patent being that stated in par. 6 above, claim 1 must be construed as a device comprising two separate shells, one on each end of the rollers, with space between the shells. In this construction the plaintiff acquiesces. In his reply brief, page 16, he says: "It is true that this particular bearing does comprise two pieces aside from all the rolls."

█ With the claim thus limited, it is apparent that the defendant's device does not infringe. Concededly, defendant uses a one-piece raceway with an integral flange at each end. That being so, it does not have the space 18 which is interposed between the two cups of the plaintiff's disclosure. In the device covered by claim

504

1, there is utterly nothing to prevent the axial displacement of a cup and the consequent displacement of all the rollers. And when the device of the patent is seated in a bushing in operative position the patentee avoids axial displacement of the cups only by the friction between the cups and the bushing in which they are seated, supplemented by shoulders held in contact with the flanges by a nut. In the defendant's device, any tendency to the axial displacement of the rollers is prevented by its flanges integral with the raceway at both ends.

Nor can I find any patentable invention in this patent over King (par. 12, above). In King, the metal raceway after being seated in its operating position is held against axial displacement at each end by a shoulder of the trolley wheel, the two halves of the trolley wheel being held together by a screw. Heim's arrangement is almost identical: he uses a nut, instead of a screw, to hold his shoulders in abutment on his flanges. To be sure, King did not provide any space between the inner ends of his two raceway shells. But if the presence of this space is construed to be an essential element of Heim's claim, clearly the defendant does not infringe. For no such space is found in the defendant's device. And although King specified "suitable hardened metal" for his raceway, I infer that he did not comtemplate the use of sheet metal. I must hold, however, that it involved no invention over the references cited to substitute sheet metal for King's raceway and flange. And of course, after the development of the art of working sheet metal by dies, stamps, punches and presses, the precise shape of a flange adapted to hold the tapered end of a roller was a matter of design rather than invention. A finding of invalidity is consequently required.

### No. 2,080,609

In considering this patent, at once the question arises whether the claims in suit must be construed as limited to a device made of two shells telescoped together in a forced fit according to the method described in the specification. If so, obviously the defendant's device complained of—which utilizes a one-piece shell—does not infringe. If, on the other hand, the claims in suit must be construed to cover the fully-assembled article as disclosed, howsoever made, the conclusion of infringement is irresistible.

The question of construction thus posed is not difficult of solution. There is nothing in the specifications which requires a limitation of the claims to structures made by the method disclosed. On the contrary, the specifications state that "the embodiment of my invention * * * may be made" by telescoping shells as above described (page 2, column 1, line 58, et seq.) And on page 2, column 2, line 48, the inventor points out that he has disclosed "a construction and method of essentially practical nature in which the several objects of this invention are attained." But immediately thereafter he makes it plain that his description of a possible method of manufacture is intended only "as illustrative and not in a limiting sense." That his description of method was intended as illustrative only is further indicated on page 1, column 1, line 27. And perhaps more persuasive of an intent by the claims in suit to cover the article irrespective of the method of manufacture is the contrast between these claims in suit —which purport to cover the structure without reference to the two shells of which it might be made—with the other claims not in suit, all of which expressly specify as an element "a race including a pair of cylindrical shells telescopically fitted together." Nor is there in the file wrapper nor in the prior art which the defendant has spread upon the record any reference effective to require the narrower construction of the claims in suit.

I hold, therefore, that the claims in suit are entitled to a construction broad enough to cover the finished article disclosed even though it has a raceway made of one piece or shell, instead of two telescoped together. It follows that, if the claims are valid, the device complained of infringes.

But I am unable to find any patentable invention in the claims in suit over Vogel, par. 14 above. To be sure, Vogel does not expressly specify the material contemplated for his raceway. However, it is entirely obvious that a metal raceway was intended and in view of the undisputed evidence that sheet metal, stamped, is more economical in quantity production than castings, certainly it involved no patentable invention over Vogel for the plaintiff herein to specify a raceway of sheet metal, even if the use of sheet metal was not indeed contemplated by Vogel. Especially is this so in view of George, U.S. No. 1,173,–

793 (1916), who expressly specifi... for a roller-bearing construction a raceway formed from sheet metal.

Vogel's disclosure included a cylindrical raceway which like plaintiff's had "an inner tracking surface", as also an "outer periphery", which were "continuous axially and circumferentially." To be sure, Vogel pointed out that the shell of his raceway at its ends might be bent outwardly to abut against a surrounding sleeve provided as a mounting for the spokes of the wheel. But this was a detail of construction which was expressly stated to be optional (line 37); with this "preferable" detail of construction omitted, Vogel's bearing was as well adapted for insertion into its surrounding sleeve as was Heim's bearing for insertion into the bore of a bushing. Moreover, this optional feature did not relate to the operability of the roller-bearing construction; it merely served to make a unitary structure of the entire wheel, including the roller bearing; without this optional feature, Vogel's roller bearing was as truly a self-contained, unitary structure as was Heim's.

But even if Vogel had disclosed only his preferred form, no invention was required for its modification into a roller bearing self-contained in itself, adapted for immediate insertion into a suitable seat, as distinguished from one constituting a constituent part of some other device such as a wheel-hub. The separate, self-contained bearing had already been disclosed by Mendenhall and George. (See George, No. 1,091,830, pg. 2, line 34, et seq.) And if it were desired to separate Vogel's bearing in its preferred form from its surrounding hub, obviously all that was necessary was to omit the step of bending its raceway-shell and its flange-shell outwardly to abut on its surrounding sleeve. This, surely, was a solution within the capacity of a skilful mechanic.

The plaintiff has objected that the cruder references which I have cited from the prior art, useful (if at all) for such slow moving parts as vehicular wheels and furniture casters, were not suitable for use in modern high-speed machinery with its heavy loads and high stresses. It is accordingly contended that a roller bearing which will accommodate itself to the characteristics of modern machinery involves essentially new problems never solved by the prior art.

But when pressed to specify the nature of any new problems involved, plaintiff's expert had only two suggestions to offer. First, he made some comment on the difficulties which will ensue if a wheel out of balance is made to revolve at high speed about a shaft. But granted that this is indeed a new problem, it is one not involved in a unitary roller bearing. Indeed, there is no disclosure in plaintiff's patent as to how a wheel may be brought into precise balance and the claims in suit do not purport to cover the solution of such a problem.

Plaintiff's expert further testified that with the stresses of high-speed operation the tendency of the rollers in a bearing to axial displacement is substantially increased. This seems plausible and I accept it as true. Nevertheless, the problem thus raised was not necessarily one involving more than mechanical skill. The rollers in the earlier art were held against such displacement by the flanges. If the loosely fitting cups of Vogel were not suitable for use in high speed machinery, it involved no invention (a) either to increase the friction by telescoping them together in a forced fit as advocated by the patentee, or (b) to use a sufficiently stout flange integral with the raceway, as did the defendant in conformity with the teachings of King, Seyl, George and others. Indeed, when Mendenhall had shown an integral flange on one end of the raceway a self-contained bearing, no patentable improvement was involved by making the flange on the other end also integral with the raceway, instead of integral with a shell telescoping over the shell of the raceway. And granted as sound the further objection that under high speed operation Mendenhall's structure would develop friction between the planar ends of its rollers and its flanges, yet this difficulty could be overcome, without resort to invention, by simply utilizing rollers with tapered or reduced ends which were well known long prior to Heim's application. Cf. King, Seyl, George, Vogel. All things considered, the plaintiff's solution of the inherent problems was not one which constituted true invention under the standards set by Cuno Engineering Co. v. Automatic Devices, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; or Picard, Adm'r, v. United Aircraft Corp., 2 Cir., 128 F.2d 632.

No. 2,102,460

Claims 15 and 16 state, ostensibly as a single step in a method, the "forming from

sheet metal a cylindrical sleeve having at one end thereof an inwardly directed retaining flange with the free edge thereof bent axially of said sleeve and having at the other end thereof a substantially similar flange."

The patent teaches only that the claimed step may be accomplished by a succession of subsidiary steps whereby two cylindrical shells, each made from a separate strip of metal with a flange at its outer end, are telescoped together. There is nothing in the patent which teaches how this claimed step as stated in this claim could be accomplished in a single step. I hold, therefore, that the claims must be construed as limited to a method whereby the "sleeve" is made by telescoping two shells together.

The same construction is even more clearly required for claim 9. This claim specifies the step of "assembling a flanged portion on the other end of the race, etc." Definitely this is a step whereby the two shells are telescoped together.

■ With the claims thus limited, none of the three claims in suit are infringed. The defendant, instead of telescoping together two shells made each from a separate stamping each with a flange made in the same way, uses only a single stamping from which by cupping and punching steps it forms one flange and by drawing and pressing steps it forms the other flange. Only if these claims be construed to cover a method not taught or disclosed by patent could infringement be found. But in that event a finding of invalidity for insufficient disclosure would be required. Granted that the patent teaches how to form a raceway with a flange at one end by clipping and punching sheet metal, there is no disclosure as to how a flange may be formed at the other end of an open cylindrical shell. If the suggestion is made that means for this step are obvious, a suggestion that the other steps are equally obvious is equally valid, and no basis is left for the presence of any patentable invention in the method.

■ Indeed, the lack of patentable invention is plainly demonstrable even though the narrower construction of these claims be sound. Even the plaintiff seems not to contend that any invention was required to devise the several steps separately considered. In any event, it was well within the range of mechanical skill to select sheet metal as the material for the raceway with its integral flanges and form it as specified in the patent. George, No. 1,173,793; Anderson, No. 671,429; Mendenhall, No. 314,967; Folk No. 1,230,145. And the step of telescoping together two flanged shells involved no invention over Mendenhall and Vogel. As observed above in connection with plaintiff's Patent No. 2,080,609, both of these inventors used a fit between raceway-shell and flange-shell close enough to hold all the parts in assembly for purposes of handling when not installed. Each, to that extent, utilized the friction resulting from a telescoping fit. Granted that the moderate friction inherent in these disclosures was inadequate, without the aid of additional parts, to hold the parts from axial displacement, either in the more primitive uses of these earlier patentees or under the stresses of high speed and heavy loads in modern machinery, to overcome this difficulty by forcing the two shells together and thus increasing the friction was a conception falling short of patentable invention under present standards. Cuno Engineering Co. v. Automatic Devices and Picard v. United Aircraft, supra.

Nor is it possible to find any patentable invention in the combination of the several steps. In arriving at this conclusion we are entitled to assume that the bearing in its finished form fully assembled was in the eye of the patentee. For in a method patent the problem is not to devise the article but rather to devise a means for making an article already disclosed in its finished form. Here, as we have seen, a mechanic skilled in the art, looking at the finished product, would have no difficulty in making the raceway and its flanges. The manufacture of the rollers is not covered by these claims: no mechanical means being shown for their introduction into the raceway, we may assume that that was a step to be accomplished manually. The only mechanical problem left was to find a method for locking the rollers into the raceway after the assembly was otherwise complete.

As to this, obviously it was necessary to seat the rollers before both flanges had been given their final position. Whether the rollers should be locked in place by a final inward movement of both flanges simultaneously or whether—as these claims specify—the rollers should be introduced after one flange was in final position to be locked by a final pressure on the second

flange only, was wholly a ~~~~~~ of choi~~. Clearly no real invention was ~~~~~~ for this choice. Cf. Folk, No. 1,230,145. Thus it is apparent that the relationship of the several steps in an ordered combination was as well within the range of mechanical skill as the several steps specified, separately considered.

I now recapitulate my

## Conclusions of Law

1. Claim 1 of No. 1,943,864, if valid, is not infringed.

2. Claim 1 of No. 1,943,864 is invalid for lack of patentable invention.

3. Claims 10, 12, 13 and 14 of No. 2,080,-609, if valid, are infringed.

4. Claims 10, 12, 13 and 14 of No. 2,080,-609 are invalid for lack of patentable invention.

5. Claims 9, 15 and 16 of No. 2,102,460, if valid, are not infringed.

6. Claims 9, 15 and 16 of No. 2,102,460 are invalid for lack of patentable invention and for insufficient disclosure.

7. The defendant is entitled to a decree dismissing the complaint, with costs.

A decree may be submitted for entry, on notice unless its scope and form can be agreed upon.